## No. 12,345.

### SUCCESSION OF HARRY D. HAYS.

In an action between an executor and persons who held in their hands succession funds which they had collected, for a balance which the former claimed for the succession, defendants set up in defence an indebtedness as due them by the succession for the amount of certain notes subscribed by the deceased. Deducting the full amount of said notes from the amount in their hands, they prayed that the court order the plaintiff to accept the resulting balance, in full settlement and liquidation of all claims of the deceased or his succession against respondents, and for a judgment in their favor rejecting plaintiff's demand.  The executor had, by anticipation, attacked the notes, claiming that they evidenced no personal indebtedness whatever by the deceased, and were good against the fund only up to an amount specified.  Judgment was rendered in favor of the succession for the balance as claimed by the executor, and the judgment was satisfied.  Defendants subsequently opposed the executor's account, claiming that the judgment had determined simply the extent to which the funds in their hands stood secured by pledge and right of detention, and not the extent of the liability of the succession on the notes.  The court sustained an exception of *res judicata*, pleaded by the executor, based on the judgment.

*Held*, the liability of all parties on all claims between them was fixed and determined by the judgment.

A PPEAL from the Civil District Court for the Parish of Orleans. *King, J.*

*Frank N. Butler* for Executrix and Tutrix, Appellee.

---

*Benjamin Rice Forman* for Opponents, Appellants.

---

*E. B. Kruttschnitt, amicus curiæ,* submitted a brief.

---

Argued and submitted February 19, 1897.
Opinion handed down March 1, 1897.

The opinion of the court was delivered by

NICHOLLS, C. J. Mrs. Adele Rodriguez, widow of Harry D. Hays, dative testamentary executrix of the succession of her husband, filed in the Civil District Court a provisional account of the administration, praying that it be approved and homologated. The account showed a balance of eight thousand two hundred and seventy-eight dollars to the credit of the estate. E. Howard McCaleb and George F. Lapeyre opposed the account. They averred that they were the holders and owners of certain promissory notes of Harry D. Hays of the aggregate face value of nineteen thousand four hundred and seventy-two dollars, and of another note of two thousand one hundred and thirteen dollars, of which a description would be found in a list annexed to their opposition; that said notes had been paid in part by the proceeds of the pledge of a certain policy on the life of H. D. Hays, and that there still remained due on said notes the sum of six thousand five hundred dollars; that they had not been put down on the account as creditors of said succession; they prayed that they be recognized as creditors of the succession for said sum (the unpaid balance still due on said notes), with interest, and that the account be amended by placing them thereon as creditors for said sum, and that they be decreed to be paid in due course of administration.

Mrs. Adele Rodriguez answered, as testamentary executrix and as tutrix of her minor children. She averred that the assets of the succession consisted exclusively of the avails of a policy of insurance for fifty thousand dollars, issued by the Equitable Life Assurance Society of the United States, on the life of Harry D. Hays, which policy had been pledged by said Hays to opponents; that after the death of Hays, opponents collected all that said policy called for, to-wit, fifty thousand dollars, and retained the whole of said sum, except three thousand four hundred and twenty-eight dollars, which sum opponents voluntarily deposited in the registry of the court to the credit of the estate; that opponents claimed the balance of the avails of said policy, to-wit, forty-six thousand seven hundred and twenty-one dollars and forty-three cents, as privileged creditors of the estate; that after said three thousand four hundred and twenty-eight dollars had been thus deposited by opponents, accountant as widow in community, as dative testamentary executrix and as tutrix of her minor children, brought suit in the

Civil District Court to compel them to pay over seventeen thousand four hundred and seventy-nine dollars and eighty-one cents, being the amount then claimed by accountant to have been illegally retained by opponents in excess of the amount that was due them as creditors of the estate and as pledgee of said policy; that in the answer of opponents to the petition so filed, opponents asserted and claimed that as holders and owners of the notes referred to in their opposition, they were creditors of Harry D. Hays for the full amount of said notes, and had a right as such to hold back all they had retained of the avails of said policy; that in said suit opponents' aforesaid claim as creditors for the amount of the notes declared on in their opposition was not only specifically asserted, but said claim was expressly attacked and controverted by accountant and opponents' said claim as creditors for the full amount of said notes was therein finally determined against said opponents, as would appear from the records and judgments of the Civil District Court and of the Supreme Court in the suit entitled Adele Hays, Widow, etc., vs. Geo. F. Lapeyre and E. Howard McCaleb, No. 43,022 of the docket of the Civil District Court, and No. 11,981 of the docket of the Supreme Court; that opponents had voluntarily executed the mandate of the Supreme Court in the above entitled cause by paying over to the estate the amount they were thereby condemned to pay, to wit, the sum of six thousand four hundred and nineteen dollars and ninety-four cents, and by thus voluntarily executing said judgment they were forever estopped from asserting any claim whatever as creditors of the estate, and accountant pleaded the said judgments as res judicata as to said opponents.

The District Court sustained the plea of res judicata and dismissed the opposition. Opponents appealed.

The judgment of the Supreme Court referred to in the pleadings will be found reported in 48 An. 749 (Adele R. Hays, widow, dative executrix of the late Harry D. Hays, vs. G. F. Lapeyre and E. H. McCaleb).

Opponents contend that the thing demanded and passed upon in the suit just referred to is not the same as that which is involved in the present opposition. Their position is thus stated by their counsel:

" In the former case Mrs. Adele Hays claimed the amount of a policy on the life of her husband for fifty thousand dollars, which

had been pledged to Messrs. McCaleb & Lapeyre, and which they had collected; that was the object demanded. It is true that they claimed that the pledge had been given to secure the amount of these notes, nineteen thousand four hundred and seventy-two dollars, and that the court held that the pledge was good only to the extent of the amount that Messrs. McCaleb & Lapeyre had paid Mr. Fergus Kernan for them, to-wit: eleven thousand one hundred and seventy-five dollars. But the validity and existence of these notes as obligations of Harry D. Hays, the maker, was not at issue, and no demand was made for a judgment against Hays' succession on these notes. If the object demanded had been the amount of these notes and these notes had constituted the cause of action, the moment the court came to the conclusion that Messrs. McCaleb & Lapeyre had acquired these notes under such circumstances as to put them on inquiry so that they were not entitled to the position of holders of commercial paper acquired before maturity for value, then the inquiry would have been not what Messrs. McCaleb & Lapeyre paid to Mr. Fergus Kernan for the notes, nor what did Mr. Kernan pay to the previous holders from whom he bought them, but what consideration did Hays, the maker, receive for them. The court found as fact that Mr. Kernan had paid less than fifty cents on the dollar for less than nine thousand seven hundred and thirty-six dollars, but how much less does not appear. Nor does it appear that the court inquired into or came to any determination as to the amount received by Hays for the notes. This would have been the question for determination had the object of the demand been the amount of these notes and had they been the cause of action. But the question was the extent of the validity of the pledge of the policy of life insurance. The object demanded was the amount of that policy, and the court held that the " pledge " was valid to the amount that Messrs. McCaleb & Lapeyre had paid on the faith of the pledge, to-wit: eleven thousand one hundred and seventy-five dollars on the notes bought from Kernan, and one thousand and seventy-five dollars on the note bought from Darton. There was no evidence as to how much Darton had given Hays. *Non constat* but that Darton loaned Hays two thousand three hundred and thirteen dollars, and this is the presumption of law. The court did not find the contrary. It made no inquiry as to the amount Hays had received in consideration for any of these notes.

Their validity or existence as obligations of Hays was not in contestation. The sole question was the extent of the pledge. Although the court found that Mr. Kernan had given the various holders less than nine thousand seven hundred and thirty-six dollars, yet it held that the pledge was good to Messrs. McCaleb & Lapeyre to the amount of eleven thousand one hundred and seventy-five dollars, which they paid Mr. Kernan.''

At the time Mrs. Hays instituted the suit which terminated in the judgment in the 48th Annual, Messrs. McCaleb & Lapeyre had collected the amount of the life policy, and they had, after applying the proceeds to the payment of all claims which they conceived they then legally held against the succession of Hays, deposited the amount which they admitted as being the final balance due by them in the registry of the court to the estate. In striking this balance the full amount of the notes which figure in the present opposition was deducted. When the insurance was paid the policy ceased as between the succession and Messrs. Lapeyre & McCaleb to be collateral, and the money in the hands of the latter operated directly as a payment of the claims they held.

' The executrix was aware of the theory on which the balance was reached. She disputed the correctness of the payment in full which Messrs. Lapeyre & McCaleb had made of these notes to themselves, and therefore she attacked by direct action the position which they had taken as to the extent of their rights as holders of the notes and sought to recover from them the balance which she asserted would be due by reducing their claim as so based down to what was really and legally due.

In her petition she made a statement of the proceedings connected with all the notes which Hays had given—those which were originally held by Judge Lazarus for his client, and those which were held by Mr. Kernan. She claimed that although both sets of notes appeared on their face to represent a general personal indebtedness of Hays, and would, but for explanation, be payable generally out of any and all funds or property which he then had or might thereafter have, yet in fact they represented no such indebtedness; that from the very commencement it was understood and agreed that the notes were to be, and should be, payable out of the special fund to be collected after Hays' death from the policy; that the " debt" (if such it was to be called) was a debt due by the fund, and not by

Hays; that although Kernan appeared to be a third holder, for value, of the notes in his hands, such was not his position, he being in truth the original holder of the same; that the present plaintiffs, from their relations to the different parties, knew, or were held to have known, all the facts of the case, and when they purchased the notes from Kernan they held no better right or greater claim upon or under the notes than he did, or certainly not any greater right beyond that which resulted from the amount paid to him for the notes. Having made a statement of the facts of the case and of the legal position of the parties such as she contended them to be, she asserted that even considering the notes as evidencing a claim payable out of a fund, they were not payable to the full amount that the notes called for, for the reason that the contract in reference to payment out of the proceeds of a life policy, made as it was, between the parties, carried with it no legal liability in favor of the holders of the notes beyond the amount of the advances which had actually been made by the parties holding them. She stated a certain amount as being the balance due to the succession of Hays after payment of all the legal claims which the present plaintiffs held as holders of all the notes, and prayed for judgment for that balance.

The present plaintiffs resisted the pretensions set up by Mrs. Hays as executrix. Referring to themselves as being holders of the Kernan and Darton notes they insisted in their pleadings that they had acquired all of the same in good faith, believing them to be valid obligations of Hays and enforceable to their full amount. They denied that there was any understanding to the contrary; they averred that they would never have purchased them had they supposed that Hays had any idea of contesting their validity and declared that they were the legal third holders for value, and that it was immaterial for what price they acquired the same; that they had collected fifty thousand one hundred and twenty-five dollars for the insurance company in payment of the life policy, and that of this amount they had deposited three thousand four hundred and twenty-eight dollars in the registry of the court to the credit of the succession of Hays as the true and just balance due his succession after paying themselves all of the indebtedness and obligations of Hays held by themselves.

The prayer of their answer was " that the court order the plaintiff in the cause to accept said balance in full payment and satisfaction

and liquidation of all claims of said Hays or his succession against respondents and for a judgment in their favor rejecting plaintiff's demands and for costs and general relief."

The following extracts taken from the opinion of this court on the appeal of that case will show what the court conceived to be the issues before it and what disposition was made of them.

We said: "The complaints relate principally to the notes identified as the Kernan notes and the note held by Darton   *   *   * As to these, it is alleged that they were issued without consideration; that the defendants acquired them with full knowledge of all the circumstances under which they were issued   *   *   *

"It appears of record that the defendants were aware of the extreme illness of the insured Hays, and of the mortal nature of his disease, and that he had no property or resource of any kind save his life policy   *   *   *   In the act of compromise annulling the first assignment of the policy by the insured there is reference to the claim here, general in terms, it is true, yet sufficient to excite and put on inquiry.   Direct and express notice is not always indispensable to take notes out of the rule of the commercial law and out of the equities.   When the circumstances are such as to bring a particular case under the operation of that rule the maker of the note is legally entitled to insist upon its application regardless of actual knowledge on the part of the purchaser of the note."   *   *   * We pass to the next point:   "The defendants can not take more than their investments from the life policy.   *   *   *   They claim that they were creditors for the whole amount for which the assignment was made and plead the face value of their notes, but, in our opinion, while they had a right to their fee, advances and interest, they are without the benefit of the law applying to negotiable instruments.   When a note is made for a special purpose or taken to be collected exclusively from a policy of insurance as under the circumstances of this case, we think it is taken out of the rule which governs negotiable instruments, in so far as relates to the equities.

"The defendants are entitled to their fee, and to all they have advanced, and all they have paid for the claim they hold and interest. Their demand for the remainder after these will have been paid is rejected." The judgment of the court was as follows: "It is ordered, adjudged and decreed that the judgment appealed from be

reversed, annulled and avoided. It is further ordered, adjudged and decreed that the plaintiff recover judgment for the sum of fifty thousand one hundred and twenty-five dollars, less all amounts paid as transferees of the notes and fee, and that the case be remanded to the District Court, and a judgment be entered in accordance with this decree."

It is apparent that the policy of insurance, the notes, and the relations of parties were so closely connected with each other that we were forced, for the purposes of reaching a conclusion as to the rights and involved obligations, to enter into an examination of and to pass upon each of those subjects. At the point which matters had reached, the mere question as to whether the present plaintiffs had a right of "pledge" or "right of detention" upon the proceeds of the life policy then in their hands played no part except incidentally and indirectly. The real matter at issue was on the one hand the extent of the rights of the succession of Hays in the funds which the plaintiffs here had collected, and on the other, the extent of the claims which Messrs. McCaleb & Lapeyre held against the succession. The parties were directly at issue touching their respective rights and obligations to each other and not merely as to the security for payment which the one or the other might hold. It is very apparent that we adopted the contention made in the former case by the executrix that the notes did not represent a personal indebtedness due to the holders of the same by Hays or his succession, but that they were really obligations due by and payable out of a special fund; that they were obligations which, by reason of the subject matter of the contract from which they resulted and the relations to that contract of the parties to the suit, were not as broad as they appeared to be on the face of the papers which were presented as evidencing them, but reducible to the amount actually advanced by Messrs. McCaleb & Lapeyre to purchase them. When the insurance was collected by those gentlemen their claims upon the notes and the money in their hands merged into each other and became identical to the extent that the fund was liable for the payment of the notes. Had the fund been insufficient to have met this liability and had there been other property in the succession, this property, under the view we took of the situation, it would not have been subject to be drawn against to meet the deficiency. With the disappearance of the fund would have disappeared all liability upon the notes.

We are of the opinion that the District Court took a correct view of the issues which were raised between the parties in the former suit and finally passed upon and adjudicated by this court, and that the judgment which it rendered and which is herein appealed from should be and is hereby affirmed.